# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| WENDELL E. ATER, II, a Minor by and Through His Mother and Next Friend, CHERYL ATER, et al. | : : : : | |
| Plaintiffs | : | Case No.  C2 00 934 |
| -vs- | : : : | Judge Holschuh Magistrate King |
| PHYLLIS FOLLROD, R.N., et al. | : : | |
| Defendants. | : | |

## DEFENDANTS PHYLLIS FOLLROD, R.N., MICHELLE BIERBAUGH, R.N., CAROL HACKLEY, R.N.,  AND LOU ANNE ADKINS, R.N.'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING ALL PLAINTIFFS' CLAIMS AGAINST THEM

Now come the above named Defendants, by and through their counsel, and hereby move this Honorable Court for an Order granting Summary Judgment to Defendants Phyllis Follrod, R.N., Michelle Bierbaugh, R.N., Carol Hackley, R.N. and Lou Anne Adkins, R.N. as to all Plaintiffs' claims against them.  Plaintiffs are unable, as a matter of law, to establish the proximate cause element of their cause of action against these Defendants.  Therefore, pursuant to Federal Rule of Civil Procedure 56, these Defendants are entitled to a Judgment as a matter of law as to all Plaintiffs' claims against them.

The reasons this Motion should be granted are fully set forth in the attached Memorandum in Support.

Respectfully submitted,
/s/ Brian M. Kneafsey, Jr.

Brian M. Kneafsey, Jr. (0061441)
Warren M. Enders (0009406)
REMINGER & REMINGER CO., L.P.A.
505 South High Street
Columbus, Ohio  43215
Tel: (614) 365-7076
Fax: (614) 365-7802

**MEMORANDUM IN SUPPORT**

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs re-filed the present case in the United States District Court, Southern District of Ohio, Eastern Division on August 15, 2000. (See Plaintiffs' Original Complaint, attached as Exhibit 1). Plaintiffs, Wendell Ater, II, Cheryl Ater and Wendell Ater, Jr., named Hong Kim, M.D., Sooja Kim, M.D., Madison County Hospital, Inc., Phyllis Follrod, R.N., Michelle Bierbaugh, R.N., Carol Hackley, R.N., Madison County Hospital, Inc. Board of Directors, LouAnne Adkins, R.N., Gary Lehman, President, Michael Turner, M.D., Chief of Staff, Judy Pritt, Vice President of Patient Care, Judy Adams, R.N., Director of Nursing, and Bob Kirby, Director of Operations as Defendants. *Id*.

Plaintiffs' Complaint asserts the same claims against all four moving Defendants, to wit:

1. failure to properly and timely recognize acute signs of fetal distress and hypoxia;
2. failure to communicate the above-mentioned signs of fetal distress and hypoxia so that Cheryl Ater's high risk pregnancy could be properly managed;
3. failure to correctly interpret, document and to communicate electronic fetal heart rate patterns including failure to recognize ominous late decelerations;
4. failure to notify nursing medical management staff of the nonreassuring fetal pattern;
5. failure to seek transfer of Cheryl Ater to a level 3 hospital for management of her labor;
6. failure to invoke and follow chain of command rules to obtain prompt medical care for Cheryl Ater; and
7. failure to warn, educate or advise Cheryl Ater regarding the risk and benefits that a person in her position would need to know in order to make an informed decision regarding the management of her pregnancy . . .

*Id*. at ¶¶21-28, 52-53. Essentially, as to these moving Defendants, Plaintiffs allege that nursing actions were not taken that contributed to a delay in delivery that proximately caused permanent brain injury to Plaintiff Wendell Ater, II. (See Exhibit 1). Plaintiffs hired Patricia Spier, R.N.C., B.S.N. (hereinafter referred to as "Ms. Spier") to testify as an expert on the issue of nursing standard of care. Defendants subsequently deposed Ms.

Spier on March 3, 2004. (See Patricia Spier deposition, attached as Exhibit 2). Ms. Spier also authored two expert reports for use in this case. (See Spier Reports, attached as Exhibit 3).

Defendants concede, for purposes of this Motion only, that there may exist an issue of fact regarding whether or not these moving Defendants violated the standard of care with respect to their involvement in Plaintiffs' medical care and treatment. However, it is undisputable that Plaintiffs have failed to introduce any evidence to establish the proximate cause element of their cause of action against these moving Defendants. Simply put, Plaintiffs cannot establish that, more likely than not, that anything they suggest these Defendants should or should not have done would have changed the outcome in this case. Therefore, these moving Defendants are entitled to Summary Judgment as to all claims asserted against them.

## II. LAW AND ARGUMENT

### A. Summary Judgment Standard

In deciding a motion for summary judgment, the court must examine any evidence tending to show triable issues in the light most favorable to the nonmoving party. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material," if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine factual issue is one that "can reasonably be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Id*. at 250. All disputed facts, and reasonable inferences derived from the evidence presented, must be resolved in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

The moving party bears the burden to show the absence of a genuine issue of material fact. This burden "may be discharged by 'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id*. Courts construe Fed. R. Civ. P. 56 to satisfy one of its principal purposes, namely, to segregate and eliminate factually unsupported claims and defenses. *Celotex Corp.*, 477 U.S. at 323-24.

### B. Elements of a Prima Facie case of Medical Malpractice

Under Ohio law, in order to establish a medical malpractice case, the plaintiff must show by affirmative evidence that the defendant was unskillful or negligent and that his want of skill or care caused injury to the plaintiff. *Bruni v. Tatsumi* (1976), 46 Ohio St.2d 127, 130. "Proof of the recognized standards must necessarily be provided through expert testimony." *Id*. at 131-132. In addition to standard of care, a plaintiff is required to prove causation through medical expert testimony. *Roberts v. Ohio Permanente Medical Group, Inc.* (1996), 76 Ohio St.3d 483, 485. These requirements also apply to cases involving the professional skill and judgment of a nurse. *Ramage v. Central Ohio Emergency Serv. Inc*. (1992), 64 Ohio St.3d 97, *syllabus* ¶1.

### C. Plaintiffs are unable to establish, as a matter of law, the proximate cause element as to these moving Defendants.

Plaintiffs' nursing liability expert, Ms. Spier, testified extensively regarding her opinions as to how the moving Defendants violated the standard of care. (See Exhibit 2).

> Q: With reference to your opinions - - and I know we've - - we talked about them a little bit in your prior deposition - - have you been able to - - either with this Exhibit 4 that looks like it breaks it down a little bit as to what nurses attended to Ms. Ater at what times - - have you been able to break down your specific opinions as to negligence as it applies to different nurses that attended to Mrs. Ater?

> A: I didn't really break it down. It seemed to me that the nurses that took care of the patient were all negligent and not - - not acting as the patient advocate. Now, one of them might have been more negligent than the other. I - - I guess I didn't focus on exactly who did what or who said what.
>
> Q: Would it be fair to say that any of the nurses that attended to Ms. Ater during the time period you reviewed in the hospital were negligent regardless of the amount of time they attended to her?
>
> A: I don't - - I don't really know how to answer that. I can't answer it one way or another. I kind of was looking at the overall care.

(Exhibit 2, ppg. 43-44). Plaintiffs' own expert could not even differentiate between the care provided by the individual Defendants. Essentially, Plaintiffs want to hold these individuals collectively liable without identifying specific violations of the standard of care as to specific individuals. These moving Defendants are unaware of any legal authority that would permit such a claim under these circumstances. If Plaintiffs' expert cannot identify specific negligent acts, it would be impossible for their experts to testify that a specific negligent act proximately caused Plaintiffs' damages. The jury would be required to simply guess.

Despite the above, Defendants believe that Plaintiffs' allegations of negligence as to these moving Defendants can fairly and accurately be divided into three broad categories: 1) negligence in the actual nursing care; 2) negligence for failure to be a patient advocate; and 3) negligence for failing to give informed consent. (See Exhibit 1). For clarity, each will be addressed separately below.

<u>Negligence in the actual nursing care</u>

Pursuant to Ohio law, a nurse may not practice medicine. O.R.C. §4723.151(A) provides:

> Medical diagnosis, prescription of medical measures, and the practice of medicine or surgery or any of its branches by a nurse are prohibited.

Specifically, a person is regarded as practicing medicine if her or she "examines or diagnoses . . . prescribes, advises, recommends . . .an application, operation, or treatment, of whatever nature . . ." O.R.C. §4731.34 (3)(a-b).

In fact, "the law imposes on the physician the exclusive duty to diagnose the patient's adverse health condition and to prescribe a course of treatment for its management and care. *Berdyck v. Schinde* (1993), 66 Ohio St.3d 573, 583.

> Though a nurse is prohibited from engaging in the practice of medicine, a nurse employed by a hospital to which a patient is admitted by an attending physician is under a duty to keep the attending physician informed of the patient's condition so as to permit the physician to make a proper diagnosis and devise a plan of treatment for the patient.

*Id*. at *syllabus* ¶1, citing *Albain v. Flower Hosp*. (1990), 50 Ohio St.3d 251. However,

> a nurse who concludes that an attending physician has misdiagnosed a condition or has not prescribed the appropriate course of treatment may not modify the course set by the physician simply because the nurse holds a different view.

*Berdyck, supra* at 583.

Ms. Spier's criticisms of these moving Defendants, collectively, include allegations that they failed to properly and timely recognize acute signs of fetal distress and hypoxia, and to communicate these signs to Dr. Kim. (See Exhibit 3). Even if this were true (which Defendants explicitly deny), Plaintiffs have not, and cannot, establish that these alleged failures caused Plaintiffs' damages.

As evidenced by Plaintiffs' Complaint and Plaintiffs' numerous experts who have been deposed, with respect to these moving Defendants, Plaintiffs' claim that the failures discussed above caused a delay in the delivery of Plaintiff Wendell Ater, II, thereby causing him to suffer a hypoxic brain injury. Therefore, in order for Plaintiffs to establish the proximate cause element of their cause of action, they must have expert testimony that Dr. Kim would have delivered Plaintiff Wendell Ater, II earlier in the absence of these failures. As the court discussed in *Albain v. Flower Hosp*. (1990), 50 Ohio St.3d  251, *overruled on other grounds*:

> Even assuming that a nurse breached this duty to inform the attending physician of a patient's condition, it must further be shown that such breach was the proximate cause of the patient's injury before the hospital will be held vicariously liable therefor. Thus, a plaintiff must prove that, had the nurse informed the

>   attending physician of the patient's condition at the proper time, the
>   physician would have altered his diagnosis or treatment and
>   prevented the injury to the patient.

*Id*. at 265.  In the case *sub judice*, Plaintiffs have not produced any expert testimony that Dr. Kim would have delivered Plaintiff Wendell Ater, II, any sooner than **he** decided to, had the nurses informed him of the patient's condition.  In fact, <u>Dr. Kim has testified that, even with the benefit of hindsight, knowing the ultimate outcome, he would not have done anything different</u>:

>   Q: In retrospect, would you have handled, starting in early August of 1995, do you see anything in this record that you would do differently if presented with the same clinical presentation again?
>
>   Mr. Beausay:  I object to this is not a proper approach to the situation.
>
>   Mr. Carpenter:  Just note an objection.  If you can answer.
>
>   A: You mean do the same thing?
>   Q: Yes.
>   A: I think so.
>   Q: You would do the same thing?
>   A: Yes.

(Dr. Kim's deposition taken on June 28, 1999 in case 97CV-01-038, ppg. 105-106, attached as Exhibit 4).  Dr. Kim later even addressed the specific criticism directed at these moving Defendants:

>   Q: Did you ever throughout any of the strips that you saw, saw a repeating deceleration in this case?
>   A: I don't think so, no.
>   Q: If the nurses would have called you at two o'clock in the morning or four o'clock in the morning what have you, and said:  Doctor Kim, the strip looks the same, that is that there's some reduced variability and we're having occasional isolated decelerations, what would you have told them?
>   A: Continue monitoring.
>   Q: Just continue monitoring.
>   A: Look for repeat, continuous decel, that is what I am looking for.

(Exhibit 4, ppg. 107-108).  It is clear from this testimony that had these nurses informed him of these decelerations, he would not have altered his treatment.

<u>Negligence for failure to be a patient advocate</u>

Plaintiffs' backup argument is that these moving Defendants had a duty to go up the chain of command when they should have realized that Dr. Kim's plan of care was inappropriate.  (Exhibit 2, pg. 75).

> A:  . . . So the nurse's role as a patient advocate is to continue to go up the chain of command and document what you said to those - - each person until the right thing is done for that patient.

(Exhibit 2, pg. 77).  Even if this was done by these moving Defendants, Ms. Spier concedes that she does not know what the result would have been:

> Q: And if there was - - assuming there was a - - one of the nurses went up the chain of command on the 30th, do you have any - - any idea as to what the result would have been at Madison County Hospital?
> A: Well, **I don't know**.  I think if Dr. Kim had come in and done an ultrasound on the baby, **perhaps** he would have remained concerned and done the appropriate thing by calling the fetal medicine physician or the neonatologist or the perinatologist that he had at his disposable - - disposal; and, therefore, they would have evaluated the fetus.
> Q: And - -
> A: And **perhaps** this baby would have been born at that time and in a place that was prepared to take care of him.

(Exhibit 2, pg. 80) (emphasis added).  In other words, Ms. Spier does not know what would have happened if the chain of command was utilized. Furthermore, "perhaps" is certainly is not sufficient to meet the "more likely than not" standard.  Viewing these facts in the absolute best light to Plaintiffs, which would be to assume that Dr. Kim would have changed his treatment of the patient following the utilization of the chain of command, Plaintiffs still cannot establish that this process could have been completed soon enough to change Dr. Kim's treatment before he delivered Plaintiff Wendell Ater, II.  Ms. Spier further testified:

> Q: And do you have any idea as - - as to how long all these sequence of events would take, as far as the discussion about the chain of command, calling in the specialist, the transfer to another facility?
> A: In my experience, it - - it doesn't take that long. It's a - - a phone call. It's the doctor coming in, looking, doing an ultrasound, doing the phone call, and arranging for transport. **I don't know how long that would take**.

(Exhibit 2, ppg. 80-81) (emphasis added).

<u>Negligence for failing to give informed consent</u>

As stated above, Plaintiffs' Complaint asserts a claim against all Defendants, to include the moving Defendants, for their "failure to warn, educate or advise Cheryl Ater regarding the risk and benefits that a person in her position would need to know in order to make an informed decision regarding the management of her pregnancy . . ." (See Exhibit 1, ¶53). Ohio law, by statute, does not permit liability to a hospital for a physician's failure to obtain informed consent. O.R.C. §2317.54. Furthermore, even the process of providing informed consent to a patient by a nurse would constitute the unlawful practice of medicine as defined by statute. *See* O.R.C. §4731.34 (3)(a-b). Therefore, as a matter of law, these moving Defendants cannot be found liable on this claim.

### III. <u>CONCLUSION</u>

In summary, although there may be issues of fact with respect to whether or not these moving Defendants violated the standard of care as it relates to nursing, Plaintiffs are clearly unable to establish that any of these alleged violations caused the Plaintiffs' damages. Plaintiffs' simply cannot establish, more likely than not, that these moving Defendants could have done anything that would have affected this unfortunate outcome. Therefore, based upon the law and arguments set forth above, Defendants Phyllis Follrod, R.N., Michelle Bierbaugh, R.N., Carol Hackley, R.N. and Lou Anne Adkins, R.N. respectfully request that this Honorable Court issue an Order, granting Summary Judgment as to all Plaintiffs' claims against them.

Respectfully submitted,


/s/ Brian M. Kneafsey, Jr.
_____
Brian M. Kneafsey, Jr. (0061441)
Warren M. Enders (0009406)
REMINGER & REMINGER CO., L.P.A.
505 South High Street
Columbus, Ohio  43215
Tel: (614) 365-7076
Fax: (614) 365-7802

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was served upon the following by regular U.S. mail, postage prepaid, this __day of May, 2004:

H. Lee Thompson, Esq.
**H. LEE THOMPSON &
ASSOC. CO., L.P.A.**
85 East Gay Street, Suite 810
Columbus, Ohio  43215

Les Weisbrod, Esq.
10260 North Central Expressway
Suite 100N
Dallas, Texas  75231
Attorneys for Plaintiffs

/s/ Brian M. Kneafsey, Jr.

_____
Brian M. Kneafsey, Jr. (0061441)