# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| WENDELL E. ATER, II, a Minor by and Through His Mother and Next Friend, CHERYL ATER, et al. | : : : : | |
| Plaintiffs | : | Case No.  C2 00 934 |
| -vs- | : : : | Judge Holschuh |
| | : | Magistrate King |
| PHYLLIS FOLLROD, R.N., et al. | : : | |
| Defendants. | : | |

## DEFENDANTS' BRIEF REGARDING BIFURCATION OF TRIAL ON NEGLIGENT CREDENTIALING ISSUES

    Now come Defendants, by and through their counsel, and hereby file this Brief in support of their previously filed Motion to Bifurcate the negligent credentialing issue from the underlying medical malpractice claims at trial.

    The reasons these issues should be bifurcated are fully set forth in the attached Memorandum in Support.

                                                                                        Respectfully submitted,

                                                                                     /s/ Brian M. Kneafsey, Jr.

                                                                                      Brian M. Kneafsey, Jr. (0061441)
                                                                                      Warren M. Enders (0009406)
                                                                                      REMINGER & REMINGER CO., L.P.A.
                                                                                      505 South High Street
                                                                                      Columbus, Ohio  43215
                                                                                      Tel: (614) 365-7076
                                                                                      Fax: (614) 365-7802

**MEMORANDUM IN SUPPORT**

I. **PRELIMINARY STATEMENT**

There can be little doubt that there never existed a case where bifurcation at trial of a negligent credentialing claim from the underlying medical malpractice claim was more appropriate than in the case *sub judice*. Three Plaintiffs, eight Defendants[1], numerous allegations of substandard care directed at each, twenty experts, volumes of medical records and an untold number of pre-trial motions, evidentiary issues, and jury interrogatories lead to the inevitable conclusion that this will be an extraordinary trial for the jury to keep track of, understand, and render an appropriate verdict. And that is if this Court decides to bifurcate the negligent credentialing claim from the underlying medical malpractice claim. In the event this Court decides to try these issues together, the problems magnify exponentially.

If these issues are tried together, all of the parties will suffer extreme inconvenience. The Defendants will suffer such prejudice as to jeopardize the validity of the jury's verdict. Evidence which would clearly be inadmissible in a trial on the medical malpractice issue will not only be admitted, it will be unduly emphasized at the center of the trial. Judicial economy will be sacrificed by necessary motions, evidentiary rulings, and "mini trials." There exists a very real and likely danger that the jury could become inflamed, not only against the Defendants against whom the evidence on the negligent credentialing claim is directed, but also on the Defendants who can not be found liable for negligent credentialing. These Defendants will suffer the harshest prejudice, inconvenience, and expense.

There should be no question that bifurcation of these issues at trial is not only important, but in fact necessary to obtaining just and equitable verdicts on all claims. Therefore, Defendants respectfully renew their Motion to bifurcate the issues of negligent credentialing from the underlying medical malpractice claims at trial.

---

[1] Defendants believe that only the following remain as Defendants in this case, the rest having been dismissed voluntarily or as a result of an appropriate motion: Follrod, Bierbaugh, Hackley, Adkins, Lehman, Pritt, Adams, and Madison County Hospital, Inc.

II.     FACTUAL BACKGROUND

This Court is well aware of the facts of this case, and therefore Defendants will refrain from a providing a lengthy rendition of them here. It is important, however, for this Court to be reminded of the general nature of the allegations against the individual Defendants remaining in this case to understand just how prejudicial a single trial on both issues would be to the parties.

### A.     *Plaintiffs have not asserted claims of negligent credentialing against Nurses Follrod, Bierbaugh, Hackley and Adkins*

Nurses Follrod, Bierbaugh, Hackley and Adkins (the "treating nurses") are the only remaining Defendants who actually participated in the care and treatment of Plaintiffs Ater II and Cheryl Ater. The claims against each of these four Defendants are very similar, and can fairly be characterized as "medical malpractice" claims, including claims for "failure to inform." (See Plaintiffs' Complaint at ¶¶22-28; ¶52-53). Notably, Plaintiffs do not assert negligent credentialing claims against any of these Defendants.[2]

### B.     *Plaintiffs have not asserted a claim of negligent credentialing against Judy Adams*

Plaintiffs' claims against Judy Adams are that she failed to have a properly trained staff, failed to have appropriate policies and procedures in place and follow those policies and procedures, and failure to have or enforce a transfer policy. (See Plaintiffs' Complaint at ¶41). Plaintiffs have also asserted a claim for "failure to inform" against Defendant Adams. Id. at ¶¶52-53. Again, Plaintiffs do not assert a negligent credentialing claim against Defendant Adams. (See Plaintiffs' Complaint).

### C.     *Plaintiffs claims against Madison County Hospital, Inc., Gary Lehman, and Judy Pritt include claims of negligent credentialing*

Among others, Plaintiffs' claims against Madison County Hospital, Inc., Gary Lehman, and Judy Pritt include claims of negligent credentialing. (See Plaintiffs' Complaint at ¶30, ¶35, ¶39).

---

[2] In fact, Plaintiffs have no evidence that these four Defendants were involved in, or had a duty to be involved in, Madison County Hospital's credentialing process.

**III.     LAW AND ARGUMENT**

   A.     *Negligent credentialing under Ohio law*

Ohio does recognize the tort of negligent credentialing *against a hospital*. See *Albain v. Flower Hospital* (1990), 50 Ohio St.3d 251 (emphasis added). Hospitals have a duty to only grant and continue staff privileges of the hospital to competent defendants. *Id*. at 257-258. Defendants are unaware of any cases which have held that nurses, such as Follrod, Bierbaugh, Hackley, Adams, Adkins, and Pritt, can be held liable for a hospital's credentialing of a physician. In fact, Plaintiffs do not even assert claims for negligent credentialing against Follrod, Bierbaugh, Hackley, Adkins and Adams.[3] This is critical because it illustrates the fact that the trial of the negligent credentialing claims would only involve two of the remaining eight Defendants.

   1.     **Plaintiffs must prove their medical malpractice case before the jury or on Motion to this Court**

Plaintiffs concede that in order to prove negligent credentialing, the plaintiff must prove the underlying medical malpractice claim against the doctor. (See Plaintiffs' Brief, pg. 4, citing *Dicks v. U.S. Health Corp. of Southern Ohio*, 1996 WL 263239 (Ohio App.4[th] Dist.) citing *Browning v. Burt*, 66 Ohio St.3d 544; *St. Elizabeth Ctr. v. Browning* (1994), 510 U.S. 1111). Plaintiffs then proceed to argue their claims of medical malpractice and negligent credentialing for the next eighteen pages of their Brief, presumably in some attempt to demonstrate that they could prove their case. (See Plaintiffs' Brief, ppg. 7-25). Plaintiffs have simply missed the point. They do not "prove" their medical malpractice claim by argument in a brief. Proving the medical malpractice claim requires a jury verdict.

---

[3] Plaintiffs have made a claim of negligent credentialing against Defendant Pritt, however, Plaintiffs' credentialing expert, Arthur Shorr, did not offer any opinions that Pritt was, or had a duty to be, involved in the credentialing process of a physician. (See Shorr's deposition, attached as Exhibit L to Plaintiffs' Brief). It cannot be disputed that, as a nurse, Defendant Pritt would not be qualified to evaluate Dr. Hong Kim or Dr. Sooja Kim (See *Albain, supra* at 257-258, "The hospital may delegate this duty to a **staff physician** committee . . .") (emphasis added).

> 2. **Plaintiffs negligent credentialing claim is not ripe until they receive a judgment on the medical malpractice claims**

As discussed above, Plaintiffs, at the beginning of trial, will not have proven their medical malpractice claims against any Defendants. Perhaps Chief Justice Moyer explained it best:

> The above-emphasized language [but for the lack of care in the selection or the retention of the physician, the physician would not have been granted staff privileges, and the plaintiff would not have been injured] underscores a crucial point underemphasized by the majority's opinion: under *Albain*, claims against a hospital for negligent retention or selection of a staff physician are dependent on an underlying medical malpractice claim against the staff physician. In order to prevail in a cause of action for negligent credentialing against a hospital pursuant to *Albain*, the plaintiff must establish not only negligent selection and/or retention of a physician, but also that but for the hospital's negligence, the plaintiff would not have been injured. ***That is, Albain requires that the underlying malpractice of the physician be proven <u>before</u> the plaintiff can recover damages against the hospital for its own negligence. Without an underlying harm to the hospital's patient through medical malpractice, an action against the hospital for negligent credentialing <u>will never arise</u>***. Although medical malpractice claims against the doctor and negligent credentialing claims against the hospital are separate causes of action, with separate and distinct duties owed to a singular class of individuals, both causes of action fail without proof that the physician's failure to abide by ordinary standards of care proximately caused the patient's harm.

*Browning v. Burt* (1993), 66 Ohio St.3d 544, 566 (Chief Justice Moyer's concurring and dissenting opinion) (emphasis added). Simply put, the issue of negligent credentialing does not become ripe until and if medical negligence is found. *Davis v. Immediate Medical Services, Inc.*, 1995 WL 809478, at *7 (attached as Exhibit 1).[4]

---

[4] As Defendants pointed out previously, *Davis* was subsequently reversed, however the Supreme Court left the bifurcation issue undisturbed. See *Davis v. Immediate Medical Services, Inc.* (1997), 80 Ohio St.3d 10.

### 3. This Court does not have jurisdiction to decide the negligent credentialing claim until after the medical malpractice claims have been proven

Article III, § 2 of the U.S. Constitution limits a district court to the adjudication of actual cases or controversies. U.S. Constitution, Art. III, § 2 . In other words, the exercise of jurisdiction requires that the case be ripe for review. *Dixie Fuel Co. v. Commissioner of Social Sec.*, 171 F.3d 1052, 1057 (6th Cir.1999). The ripeness doctrine exists to ensure that courts decide "only existing, substantial controversies, not hypothetical questions or possibilities." *Id*. citing *City Communications, Inc. v. City of Detroit*, 888 F.2d 1081, 1089 (6th Cir.1989). Until the trier of fact determines that Dr. Hong Kim or Dr. Sooja Kim were negligent, the claim for negligent credentialing is nothing more than a possibility or hypothetical issue. See e.g. *Dicks and Browning, supra.*

### B. The law governing bifurcation of issues at trial

A Court should award separate trials to (1) further the interest of convenience, (2) avoid prejudice or (3) where it would be conducive to expediency and judicial economy. Civ.R. 42 (B); *Cabe v. Lunich* (1994), 70 Ohio St.3d 598. In order to justify bifurcation, only one of the above criteria must be satisfied. *Saxion v. Titan-C-Manufacturing, Inc.* (6th Cir. 1996), 86 F.3d 553, 556. Because the Court must engage in a fact-sensitive inquiry to determine whether certain trial issues should be bifurcated, the trial Court is vested with broad discretion in deciding whether to order separate trials. *Id*.

It is undisputed that this Court has the authority to bifurcate the issue of negligent credentialing from the trial on the claims of medical malpractice. One case identified by Plaintiffs, *Corrigan v. Methodist Hospital*, 160 F.R.D. 55 (D.C.Pa.1995), discussed at some length the issues courts examine in deciding whether to order separate trials.[5]

The decision to bifurcate issues at trial is made by the balancing of equities involved. *Id*. at 57. Typically, separate or bifurcated trials are held for counterclaims,

---

[5] Notably, the *Corrigan* Court held that separate trials in that case were not warranted. However, the determination is undeniably made on a case-by-case basis. Defendants, of course, do not rely upon *Corrigan* as authority for their position, but rather as a demonstration of the factors this Court should examine. Even a cursory review of *Corrigan* demonstrates the significant factual differences from the case *sub judice*.

third party claims, or *for claims that are logical prerequisites of each other*. Id. (emphasis added). Other factors supporting bifurcation include complicated fact patterns and multiplicity of healthcare providers. See *Davis, supra*, at *7. This is clearly the situation presented by the case *sub judice*. Plaintiffs' claims of medical malpractice are logical (in fact legal) perquisites for their claim of negligent credentialing. Further, as Plaintiffs' Brief illustrates, this is a case with a very complicated fact pattern involving numerous healthcare and administrative personnel involved in distinctly different ways. It cannot be doubted that Civ. R. 42(B) was enacted for the very situation we have here.

### 1. Trial of the negligent credentialing claim with the medical malpractice claims will severely prejudice the Defendants

The prejudice to the individual defendants in a combined trial would surpass even the scope of the allegations made against them. Although Plaintiffs will not admit it, the underlying reason for wanting a combined trial on the issues of medical malpractice and negligent credentialing is the very prejudice that bifurcation would eliminate. This becomes clear when one examines the heart of their negligent credentialing allegation. Simply put, Plaintiffs' believe that evidence of Dr. Hong Kim's prior bad outcomes should have been reviewed by a credentialing committee, which would have resulted in the denial, revocation, or limiting of his privileges.[6]

#### a. The jury will be inflamed, misled and confused

First, Plaintiffs will seek to admit evidence of Dr. Hong Kim's prior bad outcomes.[7] Plaintiffs will argue that these prior bad outcomes are somehow evidence that Dr. Hong Kim should not have been granted privileges, or in the alternative, his privileges should have been limited. Even if evidence of the prior bad outcomes were admissible, probative, or relevant, Plaintiffs have not demonstrated that all, if any, of the Defendants (except Madison County Hospital, Inc.) were involved in the previous

---

[6] Defendants realize that Plaintiffs have worded their allegations and criticisms in a much more complicated fashion, however, Defendants' summation of Plaintiffs' negligent credentialing claim is fair and complete for purposes of discussion of the bifurcation issue.

[7] The numerous issues raised by Plaintiffs' introduction of evidence on Dr. Kim's previous deliveries are discussed further below.

deliveries.[8] The very real danger exists that the jury would either infer that the other defendants participated in, or were aware of, the prior bad outcomes. Not only could the jury wrongfully find many of the Defendants liable for their conduct with respect to Ater II and his mother's care based upon previous conduct, but they could find them liable **based upon the conduct of others** This is a textbook example of prejudice to the these Defendants. See *Corrigan, supra* at 57 (prejudice can be shown 'where evidence as to the specific injuries suffered by plaintiffs might influence the jury's consideration of other issues.'). In other words, by being named as Co-Defendants, Follrod, Bierbaugh, Hackley, Adkins, Adams and Pritt could be found liable by association. As non-physicians, these individuals simply did not have a duty, or authority, to evaluate Dr. Hong Kim's medical care.

Second, the jury must determine whether each Defendant is liable for medical malpractice based upon each individual's actions or inactions solely in regards to the treatment rendered to Ater II and his mother. Introduction of the vast amount of evidence needed to support the negligent credentialing claim would only confuse the jury. As is clear from the pleadings, this is an extremely complex case that should not be further complicated unnecessarily by the addition of evidence and issues that may never arise.

### b. Defendants will be subjected to unnecessary costs

The amount of discovery and trial time necessary to allege and defend the negligent credentialing claim cannot be overestimated. In fact, the resolution at trial of the negligent credentialing claim would likely take longer, and involve far greater costs, than the predicate medical malpractice claims. Defendants anticipate that Plaintiffs will attempt to introduce evidence of at least 32 fetal deaths from 1978 through 1998 in support of their negligent credentialing claim. (See Plaintiffs' Brief, pg. 14).[9] All of the Defendants, including those against whom no negligent credentialing claims have been made, will be forced to defend the care and treatment of each prior delivery that is

---

[8] Defendants strongly disagree to the admissibility or relevancy of this information at trial.
[9] Plaintiffs concede, however, that only 13 of these preceded baby Ater's birth in 1995. (See Plaintiffs' Brief, pg. 18 and Exhibit M to Plaintiffs' Brief). Clearly, anything that occurred after that time would be irrelevant, highly prejudicial, and inflammatory. Plaintiffs also allege in their Brief that these death certificates "excludes babies born with other serious complications, like baby Ater" without any evidence to support their claim that there were others. (See Plaintiffs' Brief, pg. 18).

referred to at trial. This will undoubtedly require extensive testimony by Defendants' experts that would otherwise be unnecessary. As this Court is surely aware, these experts constitute a significant part of the expenses incurred at trial. It simply does not make sense to subject Defendants to these extensive expenses until after the predicate medical malpractice claims have been resolved. If the jury finds for the Defendants, there is no claim for negligent credentialing as a matter of law. See *Browning, supra*.

### c. Otherwise inadmissible evidence will be not be excluded

A combined trial on the claims of medical malpractice and negligent credentialing would undeniably raise numerous serious evidentiary issues for this Court. These issues would result in additional pretrial motions, objections and delays during the trial. Specifically, Defendants believe that evidence of prior bad outcomes is so irrelevant and prejudicial, and its probative value so minimal, as to render it clearly inadmissible. Evid. R. 401 provides that evidence is relevant if it has "any tendency to make the existence of any fact this is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid. R. 401. One cannot imagine a situation in which the prior bad outcomes of Dr. Hong Kim's patients have any relevancy to the actions taken by nurses, **who may not have had any knowledge about those prior patients**. The only argument that could be made that these bad outcomes could be relevant is the one advanced by Plaintiffs in their negligent credentialing claim. In other words, Plaintiffs seek to use a claim that is not yet ripe as the basis to establish relevancy of evidence that would otherwise be clearly irrelevant.[10] They do so at the prejudice of all of the Defendants who are not included in the negligent credentialing claims.

Even if this Court somehow found that the evidence of the prior bad outcomes was relevant to the medical malpractice claims, exclusion of that evidence would clearly be appropriate because any probative value would be substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, and by considerations of undue delay and waste of time.[11] Evid. R. 403. To have absolutely any

---

[10] Defendants do not intend in any way to suggest that evidence of prior bad outcomes is relevant to Plaintiffs' negligent credentialing claim.
[11] Defendants incorporate their arguments made elsewhere in this Brief regarding the prejudice, confusion and delay that admission of this evidence would cause, rather than restate them here.

probative value whatsoever, Plaintiffs would have to establish that the prior bad outcomes were proximately caused by Dr. Hong Kim's negligence. This would result in virtual "mini trials," requiring testimony by experts and quite possibly by the families of the other patients. One cannot think of a more inequitable situation than one where families of previous patients were required to testify about, and relive, obviously painful times in their past. This may further encourage frivolous litigation by these families who would be misled to believe they have a cause of action.

The Court in *Lumpkin v. Wayne Hospital*, 2004 WL 102860 (Ohio App. 2nd Dist.) unreported (attached as Exhibit 2) faced this identical issue, holding that one bad result in a previous, similar surgery, without more, promotes an improper influence that because a doctor has had one bad result on a previous occasion, the doctor is incompetent. *Id*. at *4. The case for inadmissibility is even stronger where there has not been a finding of prior medical malpractice. *Id*. Such is exactly the situation in the case *sub judice*.

Further, where the trial is complicated and there are many separate and distinct issues, as in the case *sub judice*, the danger that the jury will consider evidence that may be admissible on only one issue to the prejudice of the other Defendants is heightened. *Corrigan, supra*, at 57. Because of this "spill-over" effect, separate trials are usually granted when the matters are unrelated or involve different evidence. *Id*. In the present case, the care rendered to Plaintiff Ater II and his mother by the treating nurses is clearly different than the evidence Defendants expect Plaintiffs will offer on the negligent credentialing claim.

### d. Protective measures will be ineffective

Defendants are aware of the various protective measures courts use in an attempt to prevent prejudice, such as cautionary warnings and limiting instructions. However, when there exists the danger of inflaming the jury, as exists here, these protective measures are particularly ineffective. The information subject to the limiting instruction is so prejudicial and inflammatory, that it is remembered by the jury long after the limiting instruction is forgotten, particularly in long and complex trials.

      **2.**      **Bifurcation will further judicial economy, convenience and will expedite resolution of the entire case**

Plaintiffs contend that bifurcation of the negligent credentialing claim will not serve the interests of judicial economy because much of the evidence against the hospital is the same. (See Plaintiffs' Brief, pg. 3). This statement overlooks two very important points discussed at length above. First, Plaintiff wrongly assumes that the same evidence would be admissible in a trial on both claims, against all Defendants. Second, Plaintiffs overlook the enormous expense of subjecting most of the Defendants to participate in the litigation of claims that are not directed at them.

      **a.**      **Bifurcation would eliminate the unnecessary litigation of issues**

As discussed previously, the claim for negligent credentialing only becomes ripe after the trier of fact determines that Dr. Hong Kim committed medical malpractice. See *Browning and Davis, supra*. Therefore, it is illogical to spend valuable judicial time litigating issues that are still merely hypothetical.

      **b.**      **Bifurcation eliminates the need to have numerous "mini-trials"**

A substantial portion of the time and expense associated with litigating the negligent credentialing claim would be spent on the prior bad outcomes of Dr. Kim. These issues only arise after a finding of medical malpractice by Dr. Kim with respect to his care and treatment of Plaintiffs Ater II and his mother, Cheryl. Therefore, the litigation of these issues may ultimately become completely unnecessary.

      **c.**      **Bifurcation serves to protect the validity of the jury's verdict**

As the Court in *Davis, supra*, recognized, "why raise the spector of an appeal issue or undue prejudice and bias if it can be avoided by the bifurcation of the issues?" *Davis* at *7. This trial, even on the medical malpractice claims alone, will likely take numerous weeks to complete. At least twenty experts, in addition to eight Defendants, multiple Plaintiffs, and former Defendants are all expected to testify. The time and

money spent during the trial will obviously be extensive. It simply makes sense to avoid jeopardizing the validity of the jury's verdict through the introduction of evidentiary issues that would not otherwise exist if the trial were bifurcated.

### 3. Courts have supported bifurcation of negligent credentialing claims at trial.

In *Davis v. Immediate Medical Services, Inc.*, 1995 WL 809478 (Ohio App. 5th Dist.)*unreported* (attached as Exhibit 1), the 5th District Court of Appeals found it appropriate to order separate trials under circumstances identical to those present in this case. First, the Court determined that the issue of negligent credentialing does not become ripe unless or until the physician is found liable for medical negligence. *Id*. Second, the Court held that bifurcation of medical negligence and negligent credentialing is helpful to reduce the high level of confusion experienced by the jury due to the complexity of both the fact pattern and the issues that must be resolved. *Id*.

In a related decision, the Sixth District Court of Appeals, in *Moses v. The Budd Co.*, 1993 WL 496639 (Ohio App. 6th Dist.)*unreported* (Attached as Exhibit 3) determined that bifurcation was appropriate in light of the unfair prejudice that would result from the admission of evidence against one party that should not be admissible against the other party. Although not a medical malpractice case, *Moses* addresses one of the central reasons that the Defendants in the case *sub judice* would be prejudiced if bifurcation of the negligent credentialing claim is not ordered.

## III. CONCLUSION

Based upon the above, Defendants respectfully request that this Honorable Court grant Defendants' Motion to Bifurcate and issue an Order bifurcating the negligent credentialing claim from the trial of the medical malpractice claims.

Respectfully submitted,

/s/ Brian M. Kneafsey, Jr.

_____
Brian M. Kneafsey, Jr. (0061441)
Warren M. Enders (0009406)
REMINGER & REMINGER CO., L.P.A.
505 South High Street
Columbus, Ohio  43215
Tel: (614) 365-7076
Fax: (614) 365-7802

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was served upon the following via electronic filing and ordinary U.S. mail, this 26th day of July, 2004:

H. Lee Thompson, Esq.
**H. LEE THOMPSON &
ASSOC. CO., L.P.A.**
85 East Gay Street, Suite 810
Columbus, Ohio  43215

Les Weisbrod, Esq.
10260 North Central Expressway
Suite 100N
Dallas, Texas  75231
Attorneys for Plaintiffs


/s/ Brian M. Kneafsey, Jr.
_____
Brian M. Kneafsey, Jr. (0061441)